UNITED STAES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | |
|---|---|
| CHRISTOPHER COLEMAN ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| STEPHEN CLEAR , IN HIS OFFICIAL AS ) | |
| SUPERINTENDENT OF THE SOUTHWEST ) | |
| VIRGINIA REGIONAL JAIL AUTHORITY ) | |
| ) | |
| And ) | Case No. 1:23cv00022 |
| ) | |
| SOUTHWEST VIRGINIA REGIONAL JAIL ) | |
| AUTHORITY ) | |
| ) | |
| and ) | |
| ) | |
| UNKNOWN "SWVRJA DOES", ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **Serve:** Steven Clear   Superintendent ) | |
|  Southwest Virginia Regional Jail Authority ) | |
|  15205 Joe Derting Drive ) | |
|  Abingdon, Virginia – 24210 ) | |
| ) | |

# COMPLAINT

Plaintiff Christopher Coleman, by counsel and for his Complaint seeking judgment against the Defendants, Stephen Clear, in his official capacity as Superintendent of the Southwest Virginia Regional Jail Authority, the Southwest Virginia Regional Jail Authority, an entity and an unknown number of SWVRJA Does:

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Christopher Coleman's federal law claims pursuant to 28 U.S.C.A. § 1331 and 1343(a)(3), (4).

2. This Court has supplemental jurisdiction over Christopher Coleman's state law claims pursuant to 28 U.S.C. § 1367, as both claims arise from the same circumstances and statutory notice for the state claim has been provided to the Defendant (Exhibit #7 Attached).

3. Venue is proper, pursuant to 28 U.S.C. § 1931(b), because a substantial part of the acts and omissions giving rise to Christopher Coleman's claims occurred within the Western District of Virginia.

4. Assignment to the Abingdon Division of the Western District of Virginia is proper, pursuant to Western District of Virginia Local Rules 2(a)(7) and 2(b), because the Southwest Virginia Regional Jail Authority headquarters is in Washington County, a significant number of individual defendants reside in the Abingdon Division of the Western District of Virginia and the arrest, initial arraignment, and the state trial concerning the original arrest took place in Buchanan County, within the Abingdon Division of the Western District of Virginia.

## PARTIES

5. At all relevant times, Plaintiff Christopher Coleman ("Plaintiff") was a citizen of the United States and a resident of the state of Virginia.

6. At all relevant times, Defendant Stephen Clear was Superintendent of the Southwest Virginia Regional Jail Authority; Defendant Southwest Virginia Regional Jail Authority ("SWVRJA") operated a group of regional jail facilities within the Western district of

Virginia; on behalf of a consortium of local jurisdictions, and under the authority of the Code of Virginia 1950 as amended, §53.1-95.2, et *seq.* and related statutes; that among those was the SWVRJA Haysi facility, where the acts complained of herein took place; likewise, the unknown individual "SWVRJA Doe" Defendants are employed by the SWVRJA, working within its facilities in the Western District of Virginia.

7. The Defendant Southwest Virginia Regional Jail Authority is established under authority of Code of Virginia 1950, as amended, § 53.1-95.7 as "an instrumentality exercising public and essential governmental functions to provide for the public safety and welfare" and is authorized, among other things, "To sue and be sued in its own name, plead and be impleaded". Further, SWVRJA and similar facilities are are regulated by the (Virginia) State Board of Local and Regional Jails, pursuant to Virginia Code § 53.1, *et seq.*, which establishes "operational and fiscal standards governing the operation of local and regional correctional facilities," and "minimum standards for health care services in local, regional, and community correctional facilities and procedures for enforcing such minimum standards."

## STATEMENT OF FACTS

8. Plaintiff categorically denies any use of alcohol, illegal substances, or any other contraband on or about the times relevant hereto.

9. On July 29, 2021, in the early morning hours, Plaintiff Christopher Coleman was arrested by a Buchanan County Virginia Sheriff's Deputy on a charge of public intoxication (Virginia Code § 18.2-388) on a rural highway between Honaker and Haysi, Virginia; and ultimately placed in the SWVRJA Haysi facility.

10. Pertinent events, prior to arrest, but significant to understanding the case, are as follows:

   a. During July, 2021, Christopher Coleman was staying with his mother in Haysi, having separated some weeks before from his wife (who resided in Saltville, Virginia). His mother's residence was about two miles from the SWVRJA Haysi unit.

   b. Plaintiff Coleman suffers a history of mental illnesses, with several different diagnoses. He has difficulty dealing with stressful situations. He also suffers a 'lazy eye' condition which causes him to focus through one eye at a time and limits his ability to follow objects with both eyes; further he requires corrective lenses on account of other vision problems (which make it difficult or impossible to read or have adequate visual functioning without such).

   c. On the day prior to his arrest, Plaintiff Coleman left his mother's home and traveled to Saltville to deal with issues of the separation from his wife. The visit was peaceful, but emotional and stressful.

   d. . He departed the wife's home, about midday, traveled some distance and became involved in a traffic collision that left his vehicle inoperable. Police investigated the wreck, interviewed the Plaintiff, issued a summons to him, but found no reason to arrest him, and allowed him to leave the scene of the accident.

   e. In spite of the hot sunny weather with temperatures in the high 80's to near 90, Plaintiff decided to walk back to Haysi (a distance of over 45 miles, approximately a 15 hour trek on foot). Along the way, he was able to obtain

   'courtesy rides', from a State Police Trooper and some local officers (none of whom saw fit to detain him). However, there were still times when he was walking for lengthy periods, with occasional rests beside the road.

  f. Sometime after nightfall, his last 'courtesy ride' brought him to the top of Big A Mountain, at the Russell-Buchanan County line; some 17 miles from his mother's residence.

  d. Through this time during these 'courtesy rides' during encounters with police, he explained his situation, and had been allowed to continue on his way, once the officers reached the limit of their assigned areas.

  e. At Big A Mountain, he began walking again, however, the effects of the heat, lack of food and water, other difficulties described in preceding paragraphs combined with his mental illness problems, were causing him to experience light-headedness, and feelings of approaching unconsciousness. This led to fainting, falling, apparently incurring cuts and injuries and increasing confusion; followed by an apparent loss of consciousness.

  f. His next recollection was waking up with lights shining in his face.

11. Buchanan County Sheriff's Deputy J. Davis was assigned to patrol duty in Buchanan County; encountered the Plaintiff; and at 1:24 AM on July 29, 2021 filed a criminal complaint alleging:

  "On 7-29-2021 while on patrol in the Big A Mtn. area of Buchanan County Va. I observed a male laying on the shoulder of the roadway. I approached the male woke him and identified him as Christopher Coleman. I asked Coleman to get up and have a seat on the guardrail. He was extremely unsteady on his feet, with

glassy eyes, and slurred speech. I placed Coleman under arrest for intoxicated in public." (Exhibit #1 Attached)

12. There is no record concerning any: scientific sobriety tests or any inquiries concerning what was, or might be, causing the behavior the Plaintiff exhibited; statements made by the Plaintiff, or any other factors taken into account by the Deputy.

13. Virginia Magistrate Evan Baker issued a Warrant of Arrest against Plaintiff Coleman, charging violation of Virginia Code § 18.2-388, at 1:27 AM on July 29, 2021. (Exhibit #2 Attached)

14. Deputy Davis executed the warrant by arresting Plaintiff at 1:27 AM, on July 29, 2021.

15. Magistrate Evan Baker then issued a Commitment Order against Plaintiff Christopher Coleman at 1:31 AM on July 29, 2021; which included allowance of a Recognizance Bail and allowed (by check mark on the preprinted form) "Release by Judicial Officer to custody of responsible person or when accused is no longer intoxicated." (Exhibit #4 Attached)

16. The Plaintiff's recollection of this period is very limited; he doesn't recall what the officer was telling him; only the blinding flashlights shining his face. Plaintiff does not recall being in a police vehicle, nor appearing before Magistrate Baker. His next recollection is being chained up in some kind of vehicle or van.

17. Plaintiff does recall telling someone, one of the Defendant SWVRJA Does, during this episode that he was "trying to get to his mother's home in Haysi."

18. One or more of the Defendant SWVRJA Does processed the Plaintiff into the Haysi facility's custody. Plaintiff has no recollection of any intake physical or mental evaluation; nor any emergency medical or mental health care being offered or provided at intake.

19.     Plaintiff recalls a young Defendant SWVRJA Doe, with a tattoo on his arm, shoving Plaintiff around.

20.     The Plaintiff's next recollection is waking up in a barren small room (believed to be the Haysi Jail Facility 'Drunk Tank' or some such isolation device) absent anything except a tiny grate in the floor, which he surmised was his 'toilet'. He recalls feeling like he spent days laying in the floor next his own excrement. This was while he had unbandaged wounds that he had incurred. He does not recall being provided any personal hygiene items or toilet tissue.

21.     The Plaintiff recalls being in tears and begging for fluids. He was eventually given three tiny (half-pint) cartons of milk which he drank immediately. He cannot fix the length of time he lay there, waking up only to ask for something to drink.

22.     After an undetermined period, he began to gather his thoughts and started asking about where he was and why he was there. One of the Defendant SWVRJA Does advised he was "in jail" on a charge of being "intoxicated".

23.     Sometime later, the Plaintiff asked more questions about his circumstances and was told by a Defendant SWVRJA Doe that he was "suicidal".

24.     At some point, they moved him to a cell with a toilet; and told that he was on a 'suicide watch'.

25.     He asked to call his wife or mother. But the Defendant SWVRJA Does never made that possible, nor did they provide any help in getting word to his family concerning his whereabouts or circumstances.

26.     Apparently, acting according to policies or custom or their *ad hoc* decision, the Defendant SWVRJA Does required him to be naked; allowed him only a blue polyester vest or 'suicide blanket' which was all he had to keep himself warm.

7

27. When he found it necessary to use the toilet in his cell, he was given no tissue and had to use the blanket to clean himself. He asked for a new one, but the Defendant SWVRJA Does on duty never brought it. Later, after the work shift changed, a different officer provided him a replacement. At about this time, he started yelling "Torture".

28. He recalls not getting food or water until the third and fourth day he was in custody.

29. He later learned that, during this time, his family was making frantic efforts to locate him, fearing that he might be dead.

30. On Monday, August 2, 2021, at 11:02 AM, Virginia Magistrate Albert Hagy issued a Release Order for the Plaintiff. At 11:04 AM on that date, an SWVRJA Officer released him. Plaintiff was given no explanation of what had transpired to require his extended confinement, nor what prompted his release. (Exhibits # 5 and # 6 attached)

31. Among the personal items returned to the Plaintiff by the Defendant SWVRJA Does was his wallet, which was missing a one (1) dollar bill, the only money the Plaintiff had in his possession when arrested.

32. Contrary to appropriate procedure, Defendant SWVRJA Does did not return all of the Plaintiff's property to him. Two days after his release, some of his medications were returned by a Defendant SWVRJA Doe medical staff member, when Plaintiff and his mother returned to the facility to inquire about missing items. However, a large portion of pills from a recently filled prescription were missing.

33. Among the property returned to the Plaintiff as a notebook which his mental health therapists had taught him to use to document his feelings and life events, in a part of his treatment program. At some point during his confinement, he recalls hearing a mention from one

of the Defendant SWVRJA Does that they had read this book and become concerned that he was 'suicidal'.

34. Plaintiff avers that if he was 'suicidal' proper medical attention should have been provided in a hospital or appropriate mental health facility.

35. Plaintiff avers his commitment order required release when no longer intoxicated. A mental condition involving a 'suicidal' situation is not intoxication; it is an emergency. A jail is not a mental health facility.

36. On information and belief, there was no search warrant issued for a search of the contents of his personal log. There was no institutional purpose in examining the private writings in Plaintiff's property and such reading was a violation of the guarantee of security "in persons, houses papers, and effects from unreasonable searches" under the Fourth Amendment.

37. Plaintiff has attempted to get records relating to his detention or imprisonment at the Southwest Virginia Regional Jail Authority's Haysi Unit in order to accurately identify and name the specific individuals whose actions are described herein. However, the Authority's officials have declined to release such information, in "exercise of his discretion to withhold the record" requested. For that reason, "SWVRJA Does" has been used as a description.

37. The Plaintiff suffers vision problems and requires glasses for reading and normal vision. His glasses were lost during the incidents described thus, he could not see those with whom he was dealing. Further, on account of his mental issues and physical problems described above, he has only limited recollections of his times in custody. (The glasses were subsequently recovered on Big A Mountain.)

# COUNT I
## 42 U.S.C. § 1983 – Unreasonable Seizure/False Imprisonment, Unreasonable Search in Violation of the Fourth, Fifth, Eighth and Fourteenth Amendments

38. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

39. 42 U.S.C. § 1983 provides that:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

40. At all relevant times, all Defendants were acting under color of state law.

41. At all relevant times, Plaintiff, a citizen of the United States of America and the state of Virginia, had clearly established rights under the Fourth Amendment, as applied to the states by the Fourteenth Amendment,

> to be free from being falsely imprisoned in jail; and
>
> to be free from the unreasonable seizure of his person by law enforcement; and,
>
> to be free from unreasonable searches and seizures of his property; and,
>
> to be free from unlawful taking or theft, of his property; and,
>
> to be free from the unlawful searching and reading of his personal papers (without a search warrant),

by the Defendant SWVRJA Does, other law enforcement officers or anyone asserting authority of law enforcement or agents of the Commonwealth of Virginia or the SWVRJA.

42. The Defendants held the Plaintiff for over five (5) days, more than 105 hours, on account of a Class 4 Misdemeanor charge, which if he had been found guilty would have carried

no jail time. In doing so, the Defendants violated the Plaintiff's Rights under the Fourth Amendment by falsely imprisoning him far beyond any time frame contemplated by the special "protective custody" mechanism established in Virginia procedure and enshrined by the Supreme Court in *Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984),* and the precise language of the preprinted magistrate's form: "release … to custody of responsible person or when accused is no longer intoxicated"; considering the ultimate dismissal of the intoxication charge, showing he was never intoxicated, as well as the passing of several days, without the SWVRJA making any attempt to contact the Plaintiff's mother who lived only about two miles from the facility; or, assuming there was, as Plaintiff believes, a mental health situation, the Defendants' enduring failure to have Plaintiff transferred to an appropriate medical or mental health facility.

43.  The Defendants additionally violated the Plaintiff's Fourth Amendment Rights by violating the security of his papers and effects against unreasonable searches. There was no justifiable purpose to perform a search, inspection, or otherwise examine his mental health notebook which was among his personal effects. Upon recalling one of the SWVRJA Doe defendant's admission that the personal log had been read, resulting in a determination that he was 'suicidal' the Defendants make a unilateral decision to extend his confinement for several days' time with no judicial order or magistrate involvement. As an effect, the Defendants violated Plaintiff's Fifth Amendment Right to due process; and violated his Eighth Amendment Right against cruel and unusual punishment; and further violated his Fourteenth Amendment rights protecting:

>   his privileges and immunities as a citizen of the United States;
>   his right to protection of life, liberty, and property without due process of law;

11

and his right to equal protection of the laws.

## COUNT II
### State Law False Imprisonment

44. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

45. At all relevant times, the Defendants, were acting under color of state law.

46. The Defendants willfully detained the Plaintiff for over five (5) days,

47. Such detention was without the consent of the Plaintiff.

48. Such detention was unlawful and amounts to "over-detention".

49. Assuming *arguendo* that Plaintiff had been intoxicated, he should have been released in a matter of a few (perhaps five) hours; and under no circumstances should have been held One Hundred (100) hours longer. The instructions of the committing magistrate required his release "when no longer intoxicated". The SWVRJA and the SWVRJA Does, had no right to exercise mental health commitment procedures in absence of a proper judicial authorization. Such actions by the SWVRJA, and the Defendant SWVRJA Does violates of the direction given such actors by the Supreme Court in *Pulliam v. Allen.*

50. The Defendant SWVRJA Does, upon receiving the Plaintiff into their custody had a duty to assess his physical and mental condition and thereupon a Constitutional duty to provide him with appropriate care and treatment or services.

51. Further, the Defendants failed in their duties regarding custody, supervision, protection and care of the Plaintiff, repeatedly violated the spirit and letter of the *Minimum Standards for Jails and Lockups* promulgated in the *Virginia Administrative Code,* Title 6

Criminal Justice And Corrections, Agency 15, State Board of Local and Regional Jails, Chapter 40.

52. The underlying legal proceedings against Plaintiff on the charge of violating Virginia Code §18.2-366 ended favorably when on August 19, 2021, in the General District Court of Buchanan County when he entered a Not Guilty plea, and, upon hearing, the Court dismissed the charge. (Exhibit #3 Attached)

53. As a direct and proximate cause of the Defendant SWVRJA and SWVRJA Does false imprisonment, Plaintiff suffered financial, emotional, and physical harm, his mental health situation was severely worsened, and he was otherwise injured.

## DAMAGES

54. As a direct result of the Defendants' conduct, Plaintiff suffered severe physical, mental, and emotional injuries and damages, including:

   a. Shame, fright, mortification, embarrassment, humiliation and loss of dignity and pride, mental anguish, emotional pain, torment and suffering caused by the Defendants' unlawful violation of Plaintiff's constitutional rights;

   b. Aggravation of his previous mental health conditions and severe deterioration of the healing he had been able to accomplish prior to the events herein described, caused by Defendants' unlawful violations of Plaintiff's constitutional rights.

   c. Violations of Plaintiff's constitutional rights;

   d. Other associated costs caused by Defendants' violation of Plaintiff's constitutional rights.

55. Further, Plaintiff asks that the Court award his expenses that he reasonably incurs in this litigation, including reasonable attorneys' and expert fees, pursuant to 42 U.S.C. § 1988(b) and (c).

WHEREFORE, based on the foregoing, Plaintiff demands judgment against Defendants for compensatory damages and punitive damages pursuant to 42 U.S.C. § 1983 and state law in an amount to be established at trial, together with costs incurred in the pursuit of just resolution of this matter, pre-judgment and post-judgment interest, and attorneys' fees to be established by the Court.

**A JURY TRIAL IS DEMANDED.**

Respectfully Submitted,

CHRISTOPHER COLEMAN

By: _____
                 Counsel

James E. Slone (VSB No. 29787)
James E. Slone, P.C.
Post Office Box 1113
Grundy, VA 24614
Phone: (276) 597-7455
Facsimile: (276) 277-2002
jim@jamesslone.com
*Counsel for Plaintiff*